**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilbert MH, LLC, | No. CV-18-04046-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Gilbert Family Hospital, LLC, et al., | |
| Defendants. | |

Before the Court are: (1) Defendants Gilbert Family Hospital, LLC ("Gilbert Family"), Henry and Karen Higgins (the "Higgins"), and Justin Hohl's ("Hohl," and collectively with Gilbert Family and the Higgins, the "Defendants") Motion for Leave to Amend Answer (the "Motion to Amend") (Doc. 43), in which Defendants seek to amend their Answer to add an affirmative defense; and (2) Plaintiff Gilbert MH, LLC ("Gilbert MH") Motion for Partial Summary Judgment (the "Motion for Partial Summary Judgment") (Doc. 47), in which Gilbert MH asks for summary judgment on the issues of the formation and breach elements of its breach of contract claim against Defendants and the formula by which its contractual damages should be calculated. The motions are fully briefed. The Court's ruling is as follows.

**I.   Background**

On November 13, 2018, Gilbert MH filed this action. (Doc. 1) The Complaint contains five counts: (1) breach of personal guarantee by Justin Hohl; (2) breach of personal guarantee by Henry and Karen Higgins; (3) fraudulent misrepresentation by

Henry Higgins; (4) breach of the lease agreement by Gilbert Family Hospital; and (5) bad faith by all Defendants. (Doc. 1 at 13–19) The parties agree on some of the core facts of this case.[1] The parties involved are: Glen Adams ("Adams"), the CEO of Coaction Development Group, who has a membership interest in Coaction Architectural Group, and owns approximately 70% of Gilbert MH; Shawn Porter ("Porter"), the COO of Coaction and 20% owner of Gilbert MH; Jared Cox ("Cox"), the COO for Coaction Development Group and 10% owner of Gilbert MH; Joe Remes ("Remes"), a former employee of Coaction who was responsible for developing projects for Coaction; Dr. Higgins, the owner of Gilbert Family; and Dr. Hohl, Higgins's partner in developing different healthcare projects. (Doc. 51 at 2) They had planned to develop a micro hospital in Gilbert, Arizona. (Doc. 1 at 2, ¶ 5) As part of this endeavor, Gilbert MH and Gilbert Family signed a lease agreement (the "Lease Agreement") on or around October 9, 2017. (Doc. 1 at 1, ¶ 4) The Lease Agreement concerns the construction and lease of the planned micro-hospital. (Doc. 46-1) Gilbert MH is landlord and Gilbert Family tenant under the Lease Agreement. (Doc. 46-1 at 1) The parties do not dispute that the Lease Agreement is a valid and binding contract. It provides that any dispute shall be resolved under the laws of where the leased premises were located, and such premises were to be located in Arizona. The parties do not dispute that Arizona law governs the Lease Agreement. There are five articles and one exhibit of the Lease Agreement which are relevant to the Motion for Partial Summary Judgment: (1) Article 17, subordination and attornment; (2) Article 18, estoppel certificate; (3) Article 22, default by Tenant; (4) Article 24, representations and warranties; (5) Article 41, no waiver; and (6) Exhibit B-1, scope of work and it embedded damages provision. (Doc. 46-1 at 15–16, 19–23, 30, 38–43)

On December 11, 2019, Defendants filed the Motion to Amend, requesting leave to amend their Answer to add the affirmative defense of failure to mitigate damages. (Doc.

---

[1] Although some of the statements of facts submitted in relation to the Motion for Partial Summary Judgment are voluminous, the Court will only address the facts and evidence which are (1) relevant to the two narrow issues of the Motion, and (2) admissible under all applicable rules.

43 at 2). On December 20, 2019, Plaintiff filed its Motion for partial Summary Judgment, asking the Court to grant summary judgment on the formation and breach elements of its contract claim against Defendant Gilbert Family and the formula by which its damages will be calculated. (Doc. 47 at 1)

## II.     Legal Standard

### A.     Motion for Leave to Amend the Answer

On January 22, 2019, the Court entered its Rule 16 Case Management Order. (Doc. 25) In the Case Management Order, the Court set "the deadline for . . . amending pleadings and filing supplemental pleadings as April 1, 2019." (Doc. 25 at 1–2) The Court also gave clear notice to the parties that it intended to "enforce the deadlines and guidelines set forth in this Order, and [the parties] should plan their litigation activities accordingly." (Doc. 25 at 8) Furthermore, the Court explained that it "[would] not extend the deadlines absent good cause to do so." (Doc. 25 at 8) The deadline for fact discovery and the taking of expert depositions was set as December 16, 2019 (Doc. 25 at 2, 4) and the deadline for dispositive motions was set as December 20. 2019 (Doc. 25 at 5).

Although Federal Rule of Civil Procedure 15(a) sets a liberal amendment policy, FRCP 16 applies now because the Court's case management amendment deadline has passed. Fed. R. Civ. P. 15(a)(2); *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 328 (D. Ariz. 2018); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992) (stating that after the date specified in the scheduling order has passed, the party must first satisfy the requirements of FRCP 16, and then must demonstrate amendment is proper under FRCP 15).

FRCP 16 provides that deadlines established in a case management order may "be modified only for good cause[.]" Fed. R. Civ. P. 16(b)(4); see *Johnson*, 975 F.2d at 608. The FRCP 16 "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609; *Morgal v. Maricopa Cty. Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (stating that diligence may be shown by a movant demonstrating (1) that it was diligent in assisting in the creation of a workable Rule 16

3

order; (2) that its noncompliance with a Rule 16 deadline occurred, notwithstanding diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that it was diligent in seeking amendment of the Rule 16 order once it became apparent that the movant could not comply with the order).

Next, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Lorona v. Arizona Summit Law Sch.*, LLC, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015). Courts should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.*

### B. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323 (citations omitted). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* Summary judgment is, therefore, proper if the nonmoving party fails to make a showing sufficient to establish the existence of an

essential element of his case on which he will bear the burden of proof at trial. *Id.*

## III. Analysis

### A. Motion for Leave to Amend Answer

Contrary to Defendants' argument in their Motion to Amend, the governing standard is not Rule 15 alone: it is first and foremost Rule 16(b), because the Court's case management amendment deadline has passed, and only if Defendants can meet such standard will the Court look to the Rule 15(a) standard. Good cause in the context of Rule 16(b) rests primarily on the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609. "Carelessness is not compatible with a finding of diligence and offers no reasons for a grant of relief." *Id.*

Defendants acknowledge this standard in their reply. (Doc. 49 at 4–6) However, the Court finds that Defendants have failed to show good cause for their requested amendment under Rule 16(b). One crucial and determinative explanation the Court cannot find in Defendants' pleadings supporting their request for leave to amend is why they did not take the "key" deposition sooner than they did. The Motion to Amend is based on one item: the deposition of Glen Adams and the new facts Defendants discovered during that deposition. (Doc. 43 at 3) That deposition took place on December 5, 2019. (Doc. 43 at 3) Therefore, it took place approximately eight months after the deadline to amend pleadings had passed, almost one year after fact discovery had begun, and nine days before the close of fact discovery and deadline for expert depositions. (Doc. 25 at 2, 4) Defendants never explained why such deposition took place so late in the discovery process. From what the Court can discern, Glen Adams is the principal stakeholder in Gilbert MH, owning approximately 70% in Gilbert MH. (Doc. 49-1 at 11, 20:18–21:3)

Additionally, Adams, like the other two owners of Gilbert MH—Shawn Porter and Jared Cox—had signed a personal guarantee for the Coldwater Loan. (Doc. 49-1 at 15–18) The Court finds that without an explanation for such delay, it cannot conclude that Defendants were diligent in their effort to uncover the facts supporting their Motion to Amend. Indeed, it seems to the Court that figuring out the ownership interests in the various

entities involved, in a case for a breach of a lease agreement involving various guarantees and a loan agreement, should have been done early in the case. If the Defendants had been diligent, the Court does not see how they would have waited to depose Adams for eight or more months knowing he had personally guaranteed the Coldwater Loan and this could have revealed a failure to mitigate damages. It is possible there are some good reasons as to why Defendants waited so long but Defendants failed to set forth those reasons. Accordingly, the Court finds that Defendants have failed to show good cause under Rule 16(b) for their Motion to Amend and will deny it.[2]

### B.     Motion for Partial Summary Judgment

The Motion for Partial Summary Judgment contains two discrete, but interrelated, issues: (1) the breach element on the contract claim against Gilbert Family, with three alleged reasons for the breach, and (2) the applicable provision of the Lease Agreement to calculate Gilbert MH's alleged damages. (Doc. 47 at 1) The primary goal of the Court in interpreting the language of a contract is to ascertain and give effect to the intent of the parties. *See Taylor v. State Farm Mut. Auto Ins. Co.*, 175 Ariz. 148, 152 (Ariz. 1993). The Court addresses each issue in turn.

### a.   The Formation Representation

Plaintiff argues that Gilbert Family breached the Lease Agreement because it was not properly formed as a Texas limited liability company at the time it entered into the Lease Agreement. (Doc. 47 at 4) Article 24, Representations and Warranties, is the relevant provision of the Lease Agreement on this issue. (Doc. 46-1 at 22–23) Article 24.1 states that "Landlord and Tenant each represents and warrants that: (i) such party was duly formed and is validly existing and in good standing under the laws of its state of formation." (Doc. 46-1 at 22) The parties agree that Gilbert Family was not formed and validly existing at the time the Lease Agreement was executed but Gilbert Family argues that Gilbert MH

---

[2] Because Defendants must first satisfy the Rule 16(b) "good cause" standard before the Court considers the Rule 15(b) standard, and Defendants failed to do so, the Court does not address the issue of whether Defendants met the Rule 15(b) standard.

waived such representation. (Doc. 51 at 7–8) Indeed, Gilbert Family argues that Gilbert MH knew Gilbert Family was not formed at the time of execution of the Lease Agreement. (Doc. 51 at 7) Gilbert Family alleges that Higgins discussed the matter with Porter prior to signing the Lease Agreement and Porter asked Higgins to sign anyway. (Docs. 51 at 7; 54 at 14, ¶ 74) Additionally, Higgins sent an email the day the Lease Agreement was executed informing Porter that he was "planning to have the business founded in Texas." (Docs. 51 at 7; 54 at 14, ¶ 75) Gilbert Family further points out that Porter testified at his deposition that in December 2017 he inquired of Dr. Higgins regarding the status of formation but took no other action, believing this had no effect on the validity of the Lease Agreement. (Docs. 51 at 7; 54 at 14, ¶ 76; 54-5 at 49:23–52:1)

In response to Gilbert Family's waiver argument, Gilbert MH argues that the Lease Agreement contains an anti-waiver provision which protected its rights to allege a breach of the Lease Agreement based on the formation representation. (Doc. 55 at 4) Gilbert MH further argues that the "mere communication that Gilbert Family 'was planning to have the business founded in Texas does not constitute a waiver pursuant to the terms of the Lease.'" (Doc. 55 at 4) Article 41.1 of the Lease Agreement, entitled "No Waiver," states that

> [n]o failure by either party to insist on the strict performance of any covenant, duty, or condition of this Lease or to exercise any right or remedy on a breach of this Lease by the other party shall constitute a waiver of such covenant, duty, condition or breach. Any waiver shall be in writing and no waiver by either party will imply or constitute its further waiver of the same or any other matter.

(Doc. 46-1 at 30) Gilbert MH argues that it never signed a written waiver of Article 24.1, the formation representation. (Doc. 55 at 4) The Court finds that Article 41.1 cannot purport to globally exterminate waiver as a defense for any conduct by either party to the transaction. Rather, the provision must be read to protect rights of the parties under the agreement even though "strict performance" has not been demanded. Wholesale

elimination of a party's ability to defend using a waiver defense could likely be unconscionable. *Cf.* Restatement (Second) of Contracts § 208 (contractual time limit for bringing claims may be unconscionable as applied). The general view is that a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called anti-waiver or failure to enforce clause in the contract. 13 WILLISTON ON CONTRACTS § 39.36 (2019). This general rule, that a party to a written contract may waive a provision despite the existence of an anti-waiver or failure to enforce clause, is based on the view that the nonwaiver provision itself, like any other term in the contract, is subject to waiver by agreement or conduct during performance. *Id.*

Additionally, the Court is also aware that there are a number of decisions which hold that similar nonwaiver clauses in mortgages, leases, or conditional sales contracts can themselves be waived. *Dillingham Commercial Co. v. Spears*, 641 P.2d 1 (Alaska 1982); *Auto-Plaza v. Central Bank*, 394 So. 2d 6 (Ala. 1980); *Gonsalves v. Gilbert*, 356 P.2d 379 (1960); *Summa Corp. v. Richardson*, 564 P.2d 181 (1977); *Soltis v. Liles*, 551 P.2d 1297 (1976); *Hall v. Work*, 354 P.2d 837 (1960). These cases generally do not go into detail as to precisely what is necessary to vitiate a nonwaiver clause. It seems obvious that conduct alone, by failing to require the strict performance of an obligation, is not sufficient to waive the anti-waiver clause itself. A contrary reasoning would render the clause a nullity and not give any force to the intent of the parties. Instead, in order to establish that an anti-waiver clause is not enforceable, the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision. 13 WILLISTON ON CONTRACTS § 39.36.

Gilbert Family did not address the anti-waiver provision in its briefing, but the Court finds its waiver argument regarding the formation representation and the facts supporting such argument prevents the Court from granting summary judgment on this issue. Indeed, this is not a case where one party accepted late payments for a period of time, then alleged a breach of the agreement based on the late payments, and then the other party asserts a waiver of the right to sue based on late payments and the first party defends with the

presence of a similar anti-waiver clause. Here, Gilbert Family alleges that Gilbert MH knew that one of the parties to the Lease Agreement did not even legally exist at the time of execution. A year later, Gilbert MH alleges a breach of contract because of this fact. But during that year, the parties continued to negotiate on their project and trying to move the construction forward. Accordingly, the Court is faced with this situation: Gilbert MH continued to deal with Gilbert Family, allegedly knowing that Gilbert Family was not formed at the time of the execution of the Lease Agreement, effectively dealing with a non-existing legal entity. The Court finds that Gilbert Family raised facts which create a dispute on the material fact of Gilbert MH's conduct and intent of potentially waiving the formation representation and maybe even the anti-waiver clause as it applies to the representation. Accordingly, the Court finds that based on the facts alleged by Gilbert Family it cannot conclude as a matter of law that the formation representation was not waived by Gilbert MH by the alleged conduct of its principals and agents. Additionally, the intent of Gilbert MH, whether it decided knowingly to waive the formation representation and potentially the anti-waiver clause itself by its actions, is a question for the trier of fact given the conflicting facts presented by the parties.

### b. The Delivery of a Subordination Agreement and Estoppel Certificate

Next, Gilbert MH argues that Gilbert Family breached the Lease Agreement by failing to sign and return the subordination agreement and estoppel certificate that Gilbert MH sent on August 22, 2018. (Doc. 47 at 5) It further alleges that even after being notified of its default under the Lease Agreement, Gilbert Family failed to execute such documents and breached the agreement. (Doc. 47 at 5) Gilbert Family does not deny that it did not execute the document but argues that it was justified in doing so because the documents required it to misrepresent facts to Gilbert MH's lender. (Doc. 51 at 8–9) More precisely, Gilbert Family argues that there was a dispute regarding the design plans and Gilbert MH had not fully performed under the Lease Agreement but the subordination agreement and estoppel certificate required it to certify that Gilbert MH had fulfilled all its obligations under the Lease Agreement to-date. (Doc. 51 at 9) In support of such assertions, Gilbert

Family pointed to Drs. Higgins and Hohl's depositions where they respectively stated that they did not sign the documents because of the disagreements over the design plans and not being comfortable with representing that all was well with the project. (Doc. 54 at 18, ¶¶ 113–14) Gilbert MH argues that Gilbert Family did not provide those explanations when it refused to execute the documents but instead stated it could not do so because it was not yet formed. (Doc. 55 at 6; 46-8 at 7)

There is no dispute that the plain language of the Lease Agreement states that within 10 days of a request by Gilbert MH, Gilbert Family was required to deliver a subordination agreement and an estoppel certificate both in a "commercially reasonable" form. (Doc. 46-1 at 15–16) The dispute of the parties on this issue is whether Gilbert MH was justified in refusing to execute the documents or if it was required to execute them regardless of its objections under the plain language of the Lease Agreement. The party allegedly in breach who defends with an excuse for non-performance bears the burden to justify such excuse. *See Richard E. lambert, Ltd. v. City of Tucson Dept. of Procurement*, 223 Ariz. 184, 188 (Ct. App. 2009) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 94, (1963)). Here, Gilbert Family presented testimony which attempts to justify its refusal to execute the subordination agreement and estoppel certificate. The Court finds that Gilbert Family met its burden to provide enough factual support for its excuse to create a dispute of material fact. Additionally, the Court finds that some of Gilbert MH's arguments on this issue stretch the facts. Indeed, Gilbert MH argues that "neither the [e]stoppel [c]ertificate nor the [s]ubordination [a]greement requires any representation that design plans had been accepted or that all was well with the project." (Doc. 55 at 5) This is inaccurate. It is true the subordination agreement does not require such representation, but the estoppel certificate does. The certificate states that [Gilbert Family] hereby certifies . . . that: . . . . 5. [a]s of the date of this certificate (this "Certificate"), [Gilbert MH] has satisfactorily complied will all of the obligations, duties, requirements and conditions of [Gilbert MH] under the Lease as specified in the Lease." (Doc. 46-6 at 17) Clearly, if Gilbert Family, or either Higgins or Hohl by themselves prior to the formation of Gilbert Family, had executed

such certificate, they would have represented that all was well with the project with regards to Gilbert MH's actions and obligations under the Lease Agreement; the certificate is not ambiguous on this issue.

Furthermore, contrary to Gilbert MH's assertion, it is not so clear that Drs. Higgins and Holh refused to execute the documents only because Gilbert Family was not formed. In their counsel's communication to Gilbert MH on September 6, 2018, they stated in reference to the documents that "as you know, [Gilbert Family] still needs to be formed and Doctors Higgins and Hohl are tending to that now so that, without limitation, they can proceed with execution of those documents provided that your client is continuing to properly perform its obligations and the Doctors can make the representations stated therein." (Doc. 46-8 at 7) Accordingly, the Court finds that there is a dispute as to a material fact regarding the execution of the subordination agreement and the estoppel certificate, namely why Higgins and Hohl refused to execute them and whether they were required to execute a document which may have contained a misrepresentation.

### c. The Alleged Anticipatory Repudiation

As a third ground for its breach of the Lease Agreement argument, Gilbert MH alleges that Gilbert Family anticipatorily repudiated the Lease Agreement when it demanded a new provision related to the rent for the project. (Doc. 55 at 7) Gilbert MH relies on Gilbert Family's counsel email dated August 19, 2018 where counsel stated that "[w]hile I understand they may not know the costs, yet; it was agreed by the parties early on that rent would not exceed $65,000.00 per month, so this needs to be put in writing . . . . the reliance and economic feasibility going into this were based off of such statements and promises . . . . these costs increases and uncertainty are concerning since this transaction was not based on such numbers . . . . Much of the rent increase was based upon Coaction's projects 'soft costs' which are entirely controlled by Coaction . . . . In learning that some of these soft costs have nearly tripled as compared to what was agreed upon my clients need a guaranteed maximum price for rent to move forward." (Doc. 46-5 at 5) Gilbert MH argues this was a clear repudiation of the Lease Agreement because Gilbert

Family asked for a rent cap, which was never in the Lease Agreement, and refused to move forward without it. (Doc. 55 at 7)

Gilbert Family responds by arguing that it did not refuse to perform but instead, the project did not proceed based on Coaction and Gilbert MH's failure to perform. (Doc. 51 at 10) Gilbert Family alleges that the parties were unable to reach an agreement on the design plans, and that Coaction failed to value engineer the design. (Doc. 51 at 10) Finally, Gilbert Family argues that the parties proposed several amendments to the Lease Agreement, either to modify the rent or put a cap on soft costs, and the Court cannot grant summary judgment on the question of whether its conduct and statements constituted a repudiation. (Doc. 51 at 10–11) In support of those arguments, Gilbert Family points to the depositions of Higgins, Hohl, Porter, and Cox and various exhibits attached to such depositions. (Doc. 51 at 10–11)

For an anticipatory breach of contract to occur, "there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives." *Diamos v. Hirsch*, 91 Ariz. 304, 307 (1962). *See also* Restatement (Second) of Contracts § 250 (1981) (stating that repudiation is "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach.") Additionally, the Arizona Supreme Court has made clear that

> [if]f one party to a contract, either willfully or by mistake, demands of the other a performance to which he has no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an anticipatory breach has been committed. Such a repudiation is conditional in character, it is true; but the condition is a performance to which the repudiator has no right.

*Snow v. Western Sav. & Loan Ass'n*, 152 Ariz. 27, 32 (1986) (quoting 4 A. CORBIN, CORBIN ON CONTRACTS § 973 (1951)). *See also* Restatement (Second) of Contracts §

250, cmt. d at 274–275 ("Generally, a party acts at his peril if, insisting on what he mistakenly believes to be his rights, he refuses to perform his duty."). "Authorities and caselaw distinguish between a defendant's mere, good faith *offer* to perform on terms different than those contained in the contract, and his or her *insistence* upon performing terms not contained in the contract." *Snow*, 152 Ariz. at 32 (emphasis in original). In *Snow*, the Arizona Supreme Court reasoned that

> [w]here the two contracting parties differ as to the interpretation of the contract or as to its legal effects, an offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach. In order to constitute such a breach, the offer must be accompanied by a clear manifestation of intention not to perform in accordance with any other interpretation.

*Id.* (quoting 4 A. CORBIN, CORBIN ON CONTRACTS § 973).

In this case, there is no dispute as to the rent provision in the Lease Agreement and its meaning. Rent was going to be a function of actual costs. (Doc. 46-1 at 3, 47) There is also no mention in the Lease Agreement that rent would be capped. The question is whether Drs. Higgins and Hohl's statements and conduct were enough to qualify as a repudiation, a clear manifestation that they would not perform under the Lease Agreement. It is true that counsel for Gilbert Family stated on August 19, 2018 that Drs. Higgins and Hohl "need[ed] a guaranteed maximum price for rent to move forward." (Doc. 46-5 at 5) This statement, taken alone, would surely qualify as a repudiation. However, counsel did not only state that. Counsel added, in the same email, that her clients wanted to keep the deal going forward. Indeed, she stated: "let me be clear, my clients want to move forward to make the transaction, but it seems that so many material terms were not set forth in the lease agreement and there are still many unknowns. I wonder if it may be best to sit down in person and attempt to hash out a new agreement based on what is now known. Otherwise, if can't come to some written agreement on costs, my clients will need to start considering

other options." (Doc. 46-5 at 6)

The Court finds that it cannot conclude that Gilbert Family anticipatorily repudiated the Lease Agreement. Gilbert MH relies on the case of *United California Bank v. Prudential Insurance Co.*, 140 Ariz. 238 (Ct. App. 1983) to argue that Gilbert Family's conduct and statements are akin to Prudential Insurance's categorical refusal to issue a loan without receiving an in-fact first lien, which was not a provision of the initial agreement between the parties. (Doc. 55 at 7–8) Although *United California Bank* is very instructive on the law in Arizona regarding anticipatory repudiation, the Court finds it can be easily distinguished from this case. In *United California Bank*, Prudential "assumed the unvarying position in the trial court and on appeal that from at least November 1976 through June 1977 it refused to fund the permanent loan on the Hotel without an actual first lien." *United California Bank*, 140 Ariz. at 432. Gilbert Family's conduct does not come close to this level of refusal. Indeed, the email communication from its counsel and the communications from Cox and Porter regarding potential amendments to the Lease Agreement and the unplanned increase in costs raise a dispute of material fact. Gilbert Family's counsel email is ambiguous. It states, on the one hand, that Drs. Higgins and Hohl require a guaranteed maximum price for rent to move forward and, on the other hand, states they truly want the deal to move forward, but unless there is an agreement on how to manage costs, then they will look at other options. (Doc. 46-5 at 5–6) Cox admitted that he did not expect costs to become so high. (Doc. 52-10, Cox Tr., 133:25-134:8; Deposition Ex. 45) Accordingly, the Court finds that it cannot conclude that Gilbert Family anticipatorily repudiated the Lease Agreement and will deny Gilbert MH's Motion for Summary Judgment on this issue.

### d. The Applicable Damages Provision

The last issue for the Court to address is what damages provision is applicable to determine the damages Gilbert MH allegedly suffered in this breach of contract action. The parties do not dispute that the Lease Agreement contains two damages provisions or the respective language of each provision. Instead, as already set forth in this order, they

dispute how the Lease Agreement was terminated. Article 22.2 is a more traditional damages provision, triggered by an event of default under the Lease Agreement, including damages such as the right to recover the "total rent which [Gilbert MH] would have received under th[e] Lease for the remainder of the Term minus the Fair Market Rental Value as defined [in the Lease]" if Gilbert Family defaulted. (Doc. 46-1 at 21) An event of default includes, but is not limited to, the failure by Gilbert Family to perform any of the covenants and obligations under the Lease Agreement where such failure continues for more than 30 days following written notice by Gilbert MH. (Doc. 46-1 at 20) The other damages provision, the one contained in Exhibit B-1 to the Lease Agreement, is narrower. It is clearly designed to only apply if the parties could not agree on design plans. (Doc. 46-1 at 39) It states that in the event the parties cannot agree on the design plans within a specified time frame, then either party can terminate the Lease Agreement and Gilbert Family shall "reimburse Gilbert MH for 50% of any and all out-of-pocket expenses incurred by Gilbert MH pertaining to the Land." (Doc. 46-1 at 39)

At the outset, the Court notes that most of Gilbert Family's argument that one provision is more economically appropriate than the other is irrelevant to the issue. Indeed, whether one provision made more sense than the other based on the situation does not matter: what matters is how the contract was properly terminated or breached and then which damages provision covers the reasons for such termination or breach as applicable. Furthermore, the Court will not blue-pencil and revise the contract to apply one provision which is more economically fair or accurate when the parties negotiated both provisions fairly and in good faith. The Court will not rewrite an unwise bargain because one party is now disappointed by what it agreed to.

Gilbert MH goes to great length arguing about the parole evidence rule and the Court's duty to interpret contract terms according to their plain meaning. (Doc. 55 at 8–10) Gilbert MH is correct on the law but the Court finds it unhelpful in resolving the issue for a simple reason: the Court cannot rule on which provision applies at the summary judgment stage because there is a factual dispute as to why and how the Lease was terminated. This

issue must be resolved by the trier of fact who will then be able to easily decide which damages provision applies. Indeed, the Court already decided that there is a dispute of material facts as to whether Gilbert MH waived the formation representation, whether Gilbert Family breached the Lease Agreement by refusing to execute the subordination agreement and estoppel certificate because they may have contained a misrepresentation, and whether Gilbert Family anticipatorily repudiated the Lease Agreement. Additionally, Gilbert Family submitted evidence which supports its argument that the parties had not agreed on the design plans, including deposition testimony and exhibits attached to such depositions. Indeed, the deposition transcript from Dr. Higgins and the communications from Gilbert Family's counsel communicating all the objections to the construction drawings create a dispute of material fact as to whether the Lease Agreement ended because of such disagreement over the design plans or another reason. (Docs. 52-1 at 27:12–29:22; 52-5 at 24:18–25:8 ;52-3 at 69–74) Accordingly, at this stage, the Court cannot decide which damages provision applies because there is a dispute of material fact on each of the alleged grounds for breach of contract.

Accordingly,

**IT IS ORDERED** that Gilbert MH's Motion for Partial Summary Judgment (Doc. 47) is **denied in full**.

Dated this 27th day of April, 2020.

Honorable Steven P. Logan
United States District Judge